**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **VALERIE MARTINEZ**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | |
| **EL PASO POLICE DEPARTMENT and** | § | **EP-22-CV-00350-DCG** |
| **EL PASO COUNTY DETENTION** | § | |
| **FACILITY**, | § | |
| | § | |
| *Defendants*. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**GRANTING MOTION TO DISMISS**</u>

The City of El Paso moves to

(1)     substitute itself in the El Paso Police Department's place as the named Defendant in this case;[1] and

(2)     dismiss Plaintiff Valerie Martinez's claim against the Department.

Mot., ECF No. 9.  The Court **GRANTS** the City's Motion.

## I.     BACKGROUND

**A.     Plaintiff's Allegations**

The Court assumes the following well-pleaded allegations in Plaintiff's Complaint are true.  *See, e.g.*, *McCoy v. Miss. State Tax. Comm'n (In re McCoy)*, 666 F.3d 924, 926 (5th Cir. 2012) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to

---

[1] Plaintiff has also named the El Paso County Detention Facility as an additional Defendant.  *See* Compl., ECF No. 1, at 1, 4–5.  On March 30, 2023, the Court ordered Plaintiff to show cause by April 13, 2023 why the Court should not dismiss her claims against the Detention Facility *sua sponte* on the ground that the Detention Facility is not an entity with a separate legal existence that is subject to suit.  Order to Show Cause, ECF No. 13.  This Memorandum Opinion and Order does not adjudicate Plaintiff's claim against the Detention Facility.

the plaintiff." (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))).

Plaintiff suffers from bipolar disorder—a mental illness characterized by alternating cyclical episodes of depression and mania. Compl. at 2.[2] On September 18, 2020, Plaintiff attempted to commit suicide at her residence by overdosing on medication. *Id.* Although she survived the attempt, the medication caused her to lose consciousness. *Id.*

When Plaintiff regained consciousness that same day, she experienced a manic episode and started arguing with her ex-boyfriend. *Id.* Police officers from the Department arrived at Plaintiff's residence while she was still in a manic state. *Id.* at 2–3. The officers allegedly "threw Plaintiff to the ground" and caused her "to sustain severe injuries." *Id.* at 3. Emergency responders then transported Plaintiff to Las Palmas Medical Center to treat those injuries. *Id.*

On or about September 20, 2020, law enforcement personnel transferred Plaintiff from the medical center to the El Paso County Detention Facility. *Id.* On October 2, 2020, physicians at the Detention Facility diagnosed Plaintiff with breakages and fractures in her arm, bruising, broken blood vessels in her eyes, a limited range of motion, and permanent loss of full functionality of her left hand. *Id.* Plaintiff alleges that those injuries all resulted from "the events [that] occurred on September 18, 2020." *Id.*

**B.     Procedural Posture**

Plaintiff sued the Department on October 2, 2022—exactly two years from the date the Detention Facility physicians diagnosed Plaintiff's injuries, but more than two years after the

---

[2] Page citations in this Memorandum Opinion and Order refer to the page numbers assigned by the Court's CM/ECF system, not the document's internal pagination.

Department's officers allegedly injured Plaintiff.  *See id.* at 2–3, 6.  Invoking 42 U.S.C. § 1983,[3] Plaintiff alleges that the Department's officers "deprived [her] of her . . . protections" under the Fourteenth Amendment to the U.S. Constitution[4] "when they administered physical force to [her] person."  *Id.* at 4.  She claims that the Department's alleged failure to adequately train its officers constitutes an "official municipal policy which served as the moving force behind the constitutional violation perpetrated upon Plaintiff."  Resp., ECF No. 12, at 8–9.[5]

The City moves to dismiss Plaintiff's claim against the Department under Federal Rule of Civil Procedure 12(b)(6).  *See* Mot. at 3.  Among other arguments, the City contends that the applicable statute of limitations had already expired when Plaintiff filed her Complaint on October 2, 2022.  *See id.* at 2–6.  The City also argues that the Department is not a proper defendant, and that the Court should therefore substitute the City in the Department's place.  *See id.* at 1.

## II.    DISCUSSION

### A.    The Court Substitutes the City in the Department's Place as the Named Defendant

The City maintains that it "is a home rule municipality," and that Texas law consequently "grants all authority to organize a police force to the City itself."  *Id.*  "Unless the City has taken explicit steps to grant the servient agency with jural authority," the City argues, "the agency

---

[3] 42 U.S.C. § 1983 authorizes a plaintiff to bring a lawsuit "against any 'person' for violation of federal rights."  *E.g.*, *Daves v. Dallas County*, 22 F.4th 522, 532 (5th Cir. 2022) (en banc).  "Municipalities . . . are 'persons' under Section 1983."  *E.g.*, *id.*

[4] *See* Compl. at 3 ("Plaintiff has the right to substantive due process protections under the Fourteenth Amendment to the United States Constitution, including her right to life and liberty."); U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .").

[5] *See also, e.g.*, *Vardeman v. City of Houston*, 55 F.4th 1045, 1052 (5th Cir. 2022) ("To allege a plausible claim under Section 1983 against a municipality, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." (cleaned up)).

cannot engage in litigation, except in concert with the government itself." *Id.* Thus, claims the City, the Department "is an entity with no jural existence," and the Court should substitute the City as the named Defendant. *Id.* Solely for the purposes of the Motion, Plaintiff "accepts . . . that the City . . . is the proper named defendant." Resp. at 1 n.1.

The Court agrees that "[t]he El Paso Police Department is an entity with no jural existence." *E.g.*, *Nel v. Unknown El Paso Police Dep't Chief*, No. 3:20-CV-242, 2021 WL 1686459, at *2 (W.D. Tex. Apr. 29, 2021).[6] The Court therefore **GRANTS** the City's request to substitute it in the Department's place as the named Defendant. *See Reel v. Tarrant Cnty. SO*, No. 4:12-cv-920, 2013 WL 1608942, at *1 (N.D. Tex. Apr. 15, 2013) (substituting municipality in place of entity that was not "a jural entity subject to its own suit").

Having done so, the Court now considers the Motion's substantive merits.

## B.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *E.g.*, *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (cleaned up). The complaint's "well-pleaded factual allegations . . . must be taken as true and viewed in the light most favorable to the plaintiff." *E.g.*, *id.*

"Dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense" so long as that defense "appears on the face of the complaint." *E.g.*, *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020) (cleaned up). Thus, even though the

---

[6] *See also, e.g., Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir. 1991) (concluding that, because police department had no "separate legal existence," it was "improper" for the plaintiff to sue "the department itself, but not the City" (quoting *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979))).

statute of limitations "is usually pled as an affirmative defense, a statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *E.g.*, *Thompson v. Deutsche Bank Nat'l Tr. Co.*, 775 F.3d 298, 302 (5th Cir. 2014) (cleaned up).

**C.      The Statute of Limitations Bars Plaintiff's Claim**

The parties and the Court agree that the statute of limitations for filing a § 1983 claim in Texas is two years.[7]  However, the parties dispute when that two-year clock started running.

The City contends that the limitations period began on September 18, 2020, when the police officers allegedly injured Plaintiff.  Mot. at 4–6; *see also* Compl. at 2–3.  If that's correct, then the statute of limitations expired on September 18, 2022—two weeks before Plaintiff filed suit on October 2, 2022.  *See* Compl.

Plaintiff, by contrast, maintains that limitations period started on October 2, 2020—the date "she was finally diagnosed with a closed displaced comminuted fracture of the shaft of the left humerus."  Resp. at 7; *see also* Compl. at 3.  If that's correct, then the statute of limitations expired on October 2, 2022—the date Plaintiff filed suit.  *See* Compl.

**1.      Applicable Legal Principles**

A claim under § 1983 accrues when the plaintiff "knows or has reason to know that [s]he has been hurt and who has inflicted the injury."  *E.g.*, *Turnage v. Britton*, 29 F.4th 232, 244 (5th Cir. 2022) (cleaned up).  The limitations period thus begins once the plaintiff is aware of both (1) "the existence of the injury" and (2) "the connection between the injury and the defendant's actions."  *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (cleaned

---

[7] *See* Mot. at 3–4; Resp. at 4–5; *see also, e.g.*, *Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008) ("The limitations period for a § 1983 action is determined by the state's personal injury limitations period, which in Texas is two years." (cleaned up)).

up). "'[A]wareness' for accrual purposes does *not* mean actual knowledge; rather, all that must be shown is the existence of circumstances that would lead a reasonable person to investigate further." *Id.* (cleaned up).

### 2.   Plaintiff's Claim Accrued the Date the Department's Officers Allegedly Inflicted Excessive Force

Plaintiff bases her claim against the City on her allegation that the Department's officers unlawfully used excessive force against her. *See* Compl. at 4. "An excessive force claim generally accrues on the date when the force is inflicted." *Morrill v. City of Denton*, 693 F. App'x 304, 306 (5th Cir. 2017).[8]   Plaintiff alleges in her Complaint that the officers inflicted the

---

[8] The *Morrill* court based that conclusion, at least in part, on *Price v. City of San Antonio*. *See Morrill*, 693 F. App'x at 306 (citing *Price*, 431 F.3d 890, 893–94 (5th Cir. 2005), *abrogated on other grounds*, *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 391–92 (5th Cir. 2020)).  The plaintiff in *Price* alleged that, on October 31, 2001, police officers unjustifiably "beat him with their batons, spray[ed] him with pepper spray, and kick[ed] him in the chest." 431 F.3d at 891.  Because the plaintiff did not dispute that "he knew or should have known about the injuries underlying his . . . excessive force claims on October 31, 2001, when the incident occurred," the *Price* court determined that the excessive force claims accrued on that date. *Id.* at 893–94.

Besides considering whether the plaintiff's *excessive force* claims were timely, the *Price* court also evaluated whether the plaintiff's separate "*false arrest and prosecution*" claims were time-barred. *Id.* at 894 (emphasis added).  The court opined that "when false arrest claims are brought in conjunction with" false prosecution claims, "the false arrest claims are essentially part of the prosecution claims and therefore accrue at the same time." *Id.* (cleaned up).  Thus, held the *Price* court, "the statute of limitations [would] not begin running" on the plaintiff's false arrest and prosecution claims "until proceedings ha[d] terminated in the plaintiff's favor." *Id.*

*Price*'s holding regarding the accrual of *false arrest* claims is no longer good law to the extent it conflicts with the Supreme Court's 2007 decision in *Wallace v. Kato*, *see Bradley*, 958 F.3d at 391–92, which held that a false imprisonment claim accrues "when legal process [i]s initiated against" the plaintiff, rather than "upon his release from custody," *Wallace*, 549 U.S. 384, 390 (2007).

However, *Wallace* and *Bradley* do not undermine *Price*'s separate holding regarding the accrual of *excessive force* claims. *See, e.g.*, *Thornburg v. Williamson County*, No. 1:21-cv-00172, 2022 WL 1242481, at *6 (W.D. Tex. Apr. 27, 2022) (acknowledging that *Wallace* abrogated *Price* "on other grounds," but continuing to rely on *Price* for purposes of determining an excessive force claim's accrual date).  *Morrill* thus remains good law despite its citation to *Price*.

The Court also recognizes that *Morrill* is an unpublished opinion that does not bind this Court. *See* 5TH CIR. L.R. 47.5.4.  The Court nonetheless follows *Morrill* because it is the best predictor of how the Fifth Circuit might decide the issue in a future, published opinion. *Cf., e.g.*, *Test Masters Educ.*

allegedly excessive force on September 18, 2020.[9]  Plaintiff's § 1983 claim therefore accrued on

that date.  *See, e.g.*, *Morrill*, 693 F. App'x at 306.  Because Plaintiff filed her Complaint more

than two years after that date, *see* Compl., the statute of limitations bars her claim, *see, e.g.*,

*Whitt*, 529 F.3d at 282.

### 3.    The Accrual Date is Not the Date Medical Personnel Diagnosed Plaintiff's Fracture

Plaintiff insists that she "did not become aware, for purposes of accrual, of the existence

of her injury until at least October 2, 2020, when she was finally diagnosed with a closed

displaced comminuted fracture of the shaft of the left humerus."  Resp. at 7.  Thus, argues

Plaintiff, her claim "did not accrue until she was aware of the existence of her left arm injury

following formal clinical diagnosis via objective medical imaging."  *Id.*

The Court agrees with the Southern District of Texas's decision in *Kopecki v. City of*

*Corpus Christi*, which rejected a similar argument.  *See* No. C-06-513, 2007 WL 320975, at *3–

4 n.8 (S.D. Tex. Jan. 30, 2007).  The plaintiff in *Kopecki* alleged that, on September 8, 2004,

police officers "threw [her] against the wall, threw [her] to the ground, and hog[-]tied her" while

trying to arrest her.  *Id.* at *1 (cleaned up).  She claimed that "this treatment by police caused her

glasses to break, caused bleeding of the brain, and caused [her] to sustain numerous bruises, a

head injury, and an injury to her pelvic region."  *Id.* (cleaned up).

---

*Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 567 (5th Cir. 2015) (following an unpublished Fifth
Circuit opinion as "persuasive authority" while acknowledging that the unpublished case was "not
binding circuit precedent").

[9] *See* Compl. at 3 (alleging that Plaintiff's injuries resulted from "the events [that] occurred *on
September 18, 2020*" (emphasis added)); *id.* at 4 (claiming that Plaintiff suffered "multiple fractures and
breakages to her arm as a result of the excessive force employed by the . . . officers *on September 18th*"
(emphasis added); *id.* ("*On September 18, 2020*, said officers deprived Plaintiff of her Fourteenth
Amendment protections when they administered physical force to Plaintiff's person." (emphasis added)).

The *Kopecki* court held that the plaintiff's "Section 1983 claim for excessive force accrued on September 8, 2004, the date of her arrest." *Id.* at *4. The court reasoned that

> [t]he excessive force took place on that night, [the p]laintiff knew it took place, and as of September 8, 2004, when [the p]laintiff was allegedly hog[-]tied, thrown against the wall[,] and thrown to the ground, [she] knew, or had reason to know, of the injury which [wa]s the basis of her excessive force claim.

*Id.* (cleaned up).

Resisting that conclusion, the plaintiff "argued that her claims did not accrue until mid-2005, because it was not until that time that she found a doctor who told her the extent of the injuries she sustained during her arrest." *Id.* at *4 n.8. Rejecting that argument, the *Kopecki* court explained that "[a] claim does not accrue only when the [p]laintiff later learns of the severity of his or her injury, or when the [p]laintiff comes into contact with a doctor [who] informs the [p]laintiff that the injury is more severe than originally contemplated." *Id.* Instead, "the claim accrues when the [p]laintiff has reason to know of the injury that forms the basis of her claim." *Id.* (cleaned up). The plaintiff in *Kopecki* "had reason to know of the injury that form[ed] the basis [of] her Section 1983 excessive force . . . claims on the night of the arrest" because that's when the police officers allegedly "thr[ew her] against the wall and the floor and hog[-]tied" her. *Id.* (emphasis omitted). Therefore, "her claims accrued on that day, not when she finally found a doctor who informed her that her injuries were more serious than [she] previously thought."[10] *Id.* At most, the "doctor's later diagnosis of a more severe head injury [went] to the issue of damages, not to the issue of the statute of limitations." *Id.*

Here too, Plaintiff knew she had a potential § 1983 claim the moment the Department's officers "threw [her] to the ground." *See* Compl. at 3. The fact that she didn't "discover[] the

---

[10] To the extent *Kopecki* cites *Price* to support that conclusion, *see* 2007 WL 320975, at *4 & n.8, it likewise remains good law, *see supra* note 8.

extent and specificity of her injuries" until "the [D]etention [F]acility's medical clinic formally

diagnosed" her several weeks later doesn't affect her claim's accrual date. *Contra id.* at 3. The

statute of limitations therefore started to run when the officers inflicted her alleged injuries on

September 18, 2020, not when she received a formal diagnosis on October 2, 2020.

Disagreeing, Plaintiff insists that "[w]hether or not someone is injured—particularly in

cases of an internal injury" like the one she allegedly sustained here, "where the potential injury

is not readily visible—is a medical question beyond the knowledge and expertise of the common

plaintiff, and one which requires objective diagnostic study, such as radiologic imaging." Resp.

at 7. Thus, Plaintiff maintains, "while [she] may very well have been experiencing pain leading

up to that time" or "suspected an injury to her left arm," her claim "did not accrue until she was

aware of the existence of her left arm injury following formal clinical diagnosis via objective

medical imaging, as opposed to purely subjective and speculative supposition." *Id.* In Plaintiff's

view, "the Court does not, cannot, and should not expect plaintiffs to self-diagnose in

circumstances of potential injury." *Id.* at 6–7.

The Fifth Circuit has held, however, that "[i]f plaintiffs have access to facts that they do

not understand themselves, due diligence can require them to seek professional advice about

their potential claims." *Turnage*, 29 F.4th at 244 (cleaned up). In such instances, "the

limitations period begins when the circumstances would lead a reasonable person to investigate

further." *Id.* (cleaned up). Even though Plaintiff lacks the medical expertise to diagnose herself

"with a closed displaced comminuted fracture of the shaft of the left humerus" or assess whether

she sustained an "internal injury . . . not readily visible" to the naked eye, *see* Resp. at 7, she

knew the moment the officers allegedly threw her to the ground on September 18, 2020 that

Department personnel had "administered physical force to [her] person," *see* Compl. at 3–4. At

that time, "the circumstances would lead a reasonable person" in Plaintiff's position to investigate whether she sustained any injuries when officers allegedly threw her to the ground. *See Turnage*, 29 F.4th at 244 (cleaned up).  Plaintiff's claim therefore accrued on that date.

### 4.  The Fifth Circuit's Decision in *Piotrowski* Does Not Support the Contrary Result

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) does not, as Plaintiff contends, undermine that conclusion.  *Contra* Resp. at 5–7.  In *Piotrowski*, the Fifth Circuit stated that the limitations period for a § 1983 claim "begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." 237 F.3d at 576 (cleaned up).  The court explained that "[a] plaintiff's awareness" for claim accrual purposes "encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (cleaned up).  The Fifth Circuit emphasized that "[a] plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim." *Id.*  As especially relevant here, the court stated that "*[a]ctual knowledge is not required* if the circumstances would lead a reasonable person to investigate further." *Id.* (cleaned up) (emphasis added).

Plaintiff asserts the italicized statement about "actual knowledge" "refers only to the second prong of awareness—the causation prong—not the 'existence of the injury' prong." Resp. at 5.  In other words, argues Plaintiff, although a plaintiff need not have "actual knowledge . . . as to *causation*" for the limitations period to begin, "actual knowledge as to the *existence* of an injury *is* required" to start the limitations clock. *Id.* at 6 (emphasis added).[11]  According to

---

[11] *See also* Resp. at 6 ("Specifically, after stating that, 'Actual knowledge is not required "if the circumstances would lead a reasonable person to investigate further,"' the Court in *Piotrowski* goes on to say that, 'The City argues that Piotrowski either knew of the facts underlying her claims at the time of the

Plaintiff, she lacked actual knowledge of the existence of her injury until medical personnel diagnosed her fracture on October 2, 2020.  *See id.* at 7.  Thus, Plaintiff argues, the limitations period didn't begin until that date.  *See id.*

The Fifth Circuit hasn't interpreted *Piotrowski* that way.  To the contrary, the Fifth Circuit held in a post-*Piotrowski* case that "[a] claim accrues when the would-be plaintiff knows *or has reason to know that [s]he has been hurt* and who has inflicted the injury."  *See Turnage*, 29 F.4th at 244 (cleaned up) (emphasis added).  Thus, either actual *or constructive* knowledge of an injury suffices to begin the limitations period.

The moment the officers allegedly threw Plaintiff to the ground on September 18, 2020, she had "reason to know that [sh]e ha[d] been hurt," even if she didn't specifically know that the officers fractured her arm.  *See id.* (cleaned up).  Moreover, Plaintiff explicitly alleges that, soon after the alleged assault, she "was taken to the Las Palmas Medical Center Emergency Department" for two days to treat her injury, Compl. at 3, which would have given her further reason to know that she had been hurt.  Her claim therefore accrued on September 18, 2020.

### 5.    Texas's Discovery Rule Does Not Toll Plaintiff's Statute of Limitations

The Court recognizes that Texas law—which governs whether Plaintiff's limitations period is subject to tolling—features a "discovery rule" that "provides a very limited exception to" the statute of limitations.  *King-White*, 803 F.3d at 764 (cleaned up); *see also id.* ("[S]tate

---

attack in 1980 or *should have inquired into the actions of the police officers at that time.*'  This further language regarding an inquiry by the plaintiff into the conduct of the police officers makes clear that the aforecited language that '[a]ctual knowledge is not required "if the circumstances would lead a reasonable person investigate further[]"' was in reference to the causal connection between the known injury and the conduct of the potential defendants—in other words, the second prong of awareness.  Given that, and the [sic] most importantly, the plain language from *Piotrowski* that the first prong of awareness is 'the existence of the injury,' it is clear that a plaintiff must actually know that an injury exists, otherwise the Court would have said, 'the likely existence of the injury,' or 'the possible existence of the injury.  Importantly, the Court did not; rather, it said, 'the existence of the injury.'" (internal citations omitted)).

[law] equitable tolling principles control in § 1983 cases.  This includes tolling based on . . . the 'discovery rule.'" (internal citations omitted)).  Although a § 1983 claim ordinarily accrues when the alleged "wrongful act causes an injury, regardless of when the plaintiff learns of that injury," Texas's discovery rule "defers accrual of the cause of action if the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."  *Id.* (cleaned up). "In such a circumstance, the cause of action does not accrue until the plaintiff knows or reasonably should have known of the injury."  *Id.* (cleaned up).

To illustrate, suppose a worker inhales harmful silica dust on the job.  *See, e.g.*, *Childs v. Haussecker*, 974 S.W.2d 31, 34–36 (Tex. 1998).  Years later, that worker begins experiencing symptoms of silicosis—a disease caused by "occupational exposure to and inhalation of silica dust" that often does not manifest symptoms until years after exposure.  *See id.* at 34–37.  Under Texas law, the worker's occupational injury claim against his employer would *not* accrue when he was exposed to the toxic substance.  *Id.* at 38.  Instead, under the discovery rule, the cause of action would accrue

> whenever [his] symptoms manifest[ed] themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related.

*Id.* at 33.  Texas has adopted that rule because, "[u]nlike traumatic injury cases, a plaintiff who suffers from a latent injury or disease" like silicosis "typically does not and cannot immediately know about the injury or its cause because th[o]se injuries often do not manifest themselves for two or three decades following exposure to the hazardous substance."  *Id.* at 38.  Put another way, the plaintiff's injury in such cases is "inherently undiscoverable within the applicable limitations period."  *Id.*

Plaintiff's alleged injury here doesn't fit that description, as the Fifth Circuit's decision in *Whitaker v. McDonald* demonstrates.[12]  The plaintiff in *Whitaker* alleged that, on June 6, 2014, police officers repeatedly beat him with nightsticks to avert his attempt to flee in a stolen car. No. 20-40569, 2022 WL 68972, at *1 (5th Cir. Jan. 6, 2022).  The plaintiff claimed, however, that his alleged "injuries from the beating—'uncontrollable muscle spasms and uncontrollable drooling and speech impairment'"—did not manifest until "more than five years later." *Id.* Invoking Texas's discovery rule, the plaintiff argued that the limitations period on his § 1983 claim against the officers "started running only when he began to notice symptoms of his injuries in September 2019." *Id.* (cleaned up).

The Fifth Circuit rejected the plaintiff's argument that "accrual of his claim was delayed until he began to suspect the extent of his injuries years later." *Id.* at *2.  It reasoned that the plaintiff "had sufficient information to know that he was injured" at the time "he was beaten with nightsticks by officers on June 6, 2014." *Id.* (cleaned up).  "At that point, he could have filed suit and obtained relief if he proved his case." *Id.* (cleaned up).  Because he did not sue the officers until many years later, the Fifth Circuit deemed the plaintiff's claim time-barred. *Id.*

Here too, Plaintiff "had sufficient information to know that [s]he was injured" on September 18, 2020, when the officers allegedly threw her to the ground. *See id.* (cleaned up). The fact that Plaintiff did not discover "the extent of h[er] injuries" until medical personnel diagnosed her with a fractured arm on October 2, 2020 does not delay the accrual of her claim under Texas's discovery rule. *See id.*

---

[12] The Court follows *Whitaker* even though it is a non-binding, unpublished opinion. *See supra* note 8.

**6.      Conclusion**

Thus, Plaintiff's § 1983 claim against the City accrued on September 18, 2020, the day

officers allegedly employed excessive force against her.  Because Plaintiff filed her Complaint

more than two years after that date, the statute of limitations bars her claim, and the Court must

dismiss it under Rule 12(b)(6).[13]

**D.      The Court Denies Plaintiff Leave to Amend Her Complaint**

Plaintiff asks the Court to grant her leave to amend her Complaint in the event the Court

finds it "insufficient in any way."  Resp. at 10.

Although "[a] court should freely give leave to amend when justice so requires," a court

may deny such leave if amending the complaint would be futile.  *E.g.*, *Nix v. Major League

Baseball*, --- F.4th ----, 2023 WL 2534977, at *10 (5th Cir. 2023).

Allowing Plaintiff to amend her Complaint here would be futile because the statute of

limitations bars any claim based on the injuries the police officers allegedly inflicted on

September 18, 2020, whether that claim is against the City itself or any individual officer

Plaintiff might add as an additional Defendant.[14]  *See, e.g.*, *Whitaker*, 2022 WL 68972, at *2

(district court did not abuse its discretion by denying plaintiff leave to amend, as new allegations

would "not have changed the conclusion that the underlying excessive force claim was time-

barred"); *Whitt*, 529 F.3d at 282 (affirming denial of leave to amend § 1983 complaint to add

---

[13] The Court thus need not address the City's alternate argument that Plaintiff failed to validly plead that the City promulgated an official policy that was the "moving force" behind the alleged constitutional violation.  *See* Resp. at 2, 7–9; *see also supra* note 5.

Nor must the Court address the City's contention that "Plaintiff failed to exercise due diligence in serving the City."  *See* Resp. at 2, 6–7.

[14] *See* Resp. at 10 ("Plaintiff . . . intends to name the officers involved in the subject event as additional defendants hereto upon Plaintiff's discovery of their names, through the filing of a subsequent amended Complaint.").

new defendants because "the statute of limitations rendered amendment of the complaint futile").

The Court therefore **DENIES** Plaintiff leave to amend.

### III.    CONCLUSION

The Court therefore **SUBSTITUTES** the City of El Paso in the El Paso Police

Department's place as the named Defendant.

Having done so, the Court **DISMISSES** Plaintiff Valerie Martinez's claims against the

City **WITH PREJUDICE**.

The Court **DENIES** Plaintiff leave to amend her Complaint.

Because the Court has not yet adjudicated Plaintiff's claim against the remaining

Defendant (the El Paso County Detention Facility),[15] the Court respectfully **INSTRUCTS** the

Clerk of Court to keep this case **OPEN**.

**So ORDERED and SIGNED this 31st day of March 2023.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**

---

[15] *See supra* note 1.